United States District Court
Southern District of Texas

**ENTERED**

March 23, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BBC CHARTERING CARRIERS GMBH & CO. KG, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:25-CV-887 |
| PACTRA INTERNATIONAL CO., LTD., *et al.*, | § § § § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

This is a declaratory judgment action arising out of alleged damage to goods belonging to Defendant/Counter-Plaintiff Sewon America, Inc. ("Sewon") that occurred while those goods were being transported on an ocean-going vessel from Korea to the United States by Plaintiff/Counter-Defendant BBC Chartering Carriers GmbH & Co. KG ("BBC"). Before the Court are cross-motions for partial summary judgment filed by BBC and Sewon on the proper calculation of the limitation of BBC's potential liability under the Carriage of Goods by Sea Act ("COGSA"). Sewon's motion (Dkt. 9) is **GRANTED**. BBC's motion (Dkt. 7) is respectfully **DENIED**.

### I.    BACKGROUND

Sewon contracted with Defendant Pactra International Co., Ltd. ("Pactra") to arrange for the shipment of two press machines from Masan, Korea to Savannah, Georgia. (Dkt. 1 at p. 2; Dkt. 5 at p. 5; Dkt. 7-1 at p. 1). Pactra entered into a bill of lading contract with BBC to ship the press machines ("the bill of lading"). (Dkt. 7-1 at p. 1). During the

1 / 9

voyage, the press machines were allegedly damaged by a fire. (Dkt. 1 at p. 4; Dkt. 5 at p. 5). Sewon alleges that it incurred $800,000.00 in costs repairing the press machines. (Dkt. 5 at p. 5).

BBC filed this lawsuit seeking several alternative judicial declarations limiting its liability for the damage to the press machines, among them that "the limitation of liability provisions in [COGSA] apply to the [bill of lading], thus limiting any potential recovery of the defendants from BBC to $500.00 per package or customary freight unit for the alleged damage and/or loss to the [press machines]." (Dkt. 1 at p. 7). Sewon countersued BBC for breach of its duties under COGSA, negligence, breach of contract, and breach of bailment. (Dkt. 5 at pp. 6–7). BBC pled COGSA's limitation-of-liability provisions as a defense to Sewon's counterclaims. (Dkt. 6 at p. 5).

BBC and Sewon have now filed cross-motions for summary judgment seeking a ruling regarding the proper calculation of BBC's potential liability under COGSA and the terms of the bill of lading. The bill of lading contains the following provisions regarding limitation of liability under COGSA:

**B. U.S. Trade, Period of Responsibility**

(i) In case the Contract of carriage evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act of the United States of America 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading, and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody. For US trades, the terms on file with the U.S. Federal Maritime Commission shall apply to such shipments.

(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in any amount exceeding USD500 per package or customary freight unit. If despite the provisions of sub-clause 3(a), the Carrier is found to be liable for deck cargo, then all limitations and defences available under U.S. COGSA (or other applicable regime) shall apply.

(iii) For purposes of calculating the Carrier's liability under subsection (ii), the number of pieces or units listed in the box on the face of this Bill of Lading headed "Number and kind of packages; description of cargo" shall conclusively establish the number of packages. If the cargo being carried is not a package, then unless expressly stated otherwise, freight is calculated on the number of such unpackaged vehicles or other physical pieces of unpackaged cargo, including articles or things of any description whatsoever except goods shipped in bulk, and each such piece of unpackaged cargo shall conclusively be deemed one customary freight unit.

Dkt. 7-1 at p. 2.

The number of packages listed on the face of the bill of lading is 52:

| Container No./Seal No./Marks and Numbers | Number and kind of packages; description of cargo SAID TO BE |
|---|---|
| SEWON <IN DIA> | 52 PACKAGES STC<br><br>LINKLESS PRESS MACHINE (DL4P-1600)<br>CRANKLESS PRESS MACHINE (DE4P- 400) |

Dkt. 7-1 at p. 1.

BBC argues that, under the terms of the bill of lading, Sewon is only entitled to recover $500.00 "for each package actually damaged[,]" while Sewon contends that it is entitled to recover $26,000.00—$500.00 multiplied by the number of packages (52) that is listed on the face of the bill of lading. (Dkt. 7 at p. 5; Dkt. 9 at p. 4).

## II.   LEGAL STANDARDS

—*Summary judgments*

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant's initial summary judgment burden depends on whether the movant will bear the burden of proof at trial. If the non-movant will bear the burden of proof at trial on an issue raised in a motion for summary judgment, then the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). However, if the movant will carry the burden of proof at trial, as is the case when the movant is either the plaintiff or a defendant asserting an affirmative defense, then the movant can only carry its initial burden by establishing beyond peradventure all of the essential elements of its claim or defense. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.

*Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted). In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

*—COGSA and bills of lading*

COGSA "generally entitles a carrier to limit its liability to $500 per package or, if the goods are not shipped in packages, per customary freight unit." *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 352 n.4 (5th Cir. 2004) (quotation marks omitted). Generally, the party seeking to recover for damaged property "must show how much damage accrued to each package [and] will be awarded the actual damages to each package, subject to the $500 limit." *Servicios-Expoarma, C.A. v. Industrial Maritime Carriers, Inc.*, 135 F.3d 984, 995 (5th Cir. 1998). The parties may, however, "contract for greater liability" and may "contractually extend COGSA's provisions to areas, parties, and activities where they would not automatically apply." *Ziegler v. Subalipack (M) SDN BHD*, No. 4:16-CV-2598, 2017 WL 2671148, at *5 (S.D. Tex. June 21, 2017); *see also Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 30 (2004).

The determination of whether COGSA's provisions have been altered or extended in a bill of lading is a "question of contract interpretation." *Kirby*, 543 U.S. at 30. "A bill

of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Id.* at 18–19; *see also Interocean Steamship Corp. v. New Orleans Cold Storage and Warehouse Co., Ltd.*, 865 F.2d 699, 703 (5th Cir. 1989) ("The contract of carriage between a shipper and carrier enunciates the responsibility of the carrier to deliver enumerated goods to a specified location.") (quotation marks and footnote omitted). Bills of lading "must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Kirby*, 543 U.S. at 31. That said, bills of lading are "contracts of adhesion" and, accordingly, "are strictly construed against the carrier." *Interocean*, 865 F.2d at 703 (quotation marks omitted); *see also West India Industries, Inc. v. Tradex, Tradex Petroleum Services*, 664 F.2d 946, 951 n.9 (5th Cir. 1981) ("Courts construe a bill of lading strictly against the party that drafted it."); *Baltimore & O.R. Co. v. Doyle*, 142 F. 669, 673 (3d Cir. 1906) (cited in *West India*) ("Any reasonable doubt as to the proper interpretation of the contract should be resolved against the [carrier]. It chose the language incorporated in the printed portions of the bill of lading.").

### III.   ANALYSIS

Under the applicable law, the Court concludes that it must construe the language of the bill of lading strictly against BBC. Accordingly, the Court will grant Sewon's motion for partial summary judgment.

The parties' dispute revolves around the interplay between Special Clauses B(ii) and B(iii) of the bill of lading. Special Clause B(ii) reads:

(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in any amount exceeding USD500 per package or customary freight unit. If despite the provisions of sub-clause 3(a), the Carrier is found to be liable for deck cargo, then all limitations and defences available under U.S. COGSA (or other applicable regime) shall apply.

Dkt. 7-1 at p. 2.

Special Clause B(iii) reads:

(iii) For purposes of calculating the Carrier's liability under subsection (ii), the number of pieces or units listed in the box on the face of this Bill of Lading headed "Number and kind of packages; description of cargo" shall conclusively establish the number of packages. If the cargo being carried is not a package, then unless expressly stated otherwise, freight is calculated on the number of such unpackaged vehicles or other physical pieces of unpackaged cargo, including articles or things of any description whatsoever except goods shipped in bulk, and each such piece of unpackaged cargo shall conclusively be deemed one customary freight unit.

Dkt. 7-1 at p. 2.

Sewon contends that "Special Clause B(iii) provides that the calculation of BBC's limitation of liability is 'conclusively established' by the number of packages listed on the face of BBC's bill of lading regardless of damage to individual 'packages,' a contractual increase in maximum liability which COGSA allows[.]" (Dkt. 9 at p. 4). BBC vehemently disagrees and argues that Special Clause B(iii) merely "inform[s] the Court . . . exactly where to look to determine in how many packages the subject cargo was shipped in order to *begin* the COGSA limitation analysis" and to "short-circuit the 'what is a COGSA package?' analysis that courts must frequently undergo whenever cargo damage leads to litigation." (Dkt. 11 at pp. 2–3) (emphasis in BBC's brief).

The Court concludes that BBC's interpretation of the contractual language is reasonable. But so is Sewon's. As Sewon points out, Special Clause B(ii) provides that

7 / 9

BBC "shall in no event be or become liable for any loss or damage to the cargo in any amount exceeding USD500 per package or customary freight unit"—an explicit invocation of COGSA's $500-per-package liability limitation. (Dkt. 7-1 at p. 2). However, Special Clause B(iii) then provides that, "*[f]or purposes of calculating [BBC's] liability under [Special Clause B(ii)]*, the number of pieces or units listed in the box on the face of th[e] Bill of Lading headed 'Number and kind of packages; description of cargo' *shall conclusively establish* the number of packages." (Dkt. 7-1 at p. 2) (emphasis added). Put another way, according to Sewon, Special Clause B(iii) gives conclusive weight to the number of packages listed on the front of the bill of lading for the purposes of calculating BBC's total liability under the $500-per-package limit. Sewon's interpretation of the contractual language is reasonable. In fact, Sewon's interpretation does little more than parrot the express language of the bill of lading. And since the Court must construe the language strictly against BBC, Sewon must prevail. *West India Industries*, 664 F.2d at 951 n.9 ("Courts construe a bill of lading strictly against the party that drafted it.").

8 / 9

## IV.   CONCLUSION

The motion for partial summary judgment filed by Defendant/Counter-Plaintiff Sewon America, Inc. (Dkt. 9) is **GRANTED**. The motion for partial summary judgment filed by Plaintiff/Counter-Defendant BBC Chartering Carriers GmbH & Co. KG (Dkt. 7) is respectfully **DENIED**.

SIGNED at Houston, Texas on March 23, 2026.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE